OPINION
{¶ 1} Defendant-appellant Jesse Timothy Hill appeals the November 8, 2001 Judgment Entry of the Stark County Court of Common Pleas which, after a jury verdict, found him guilty of aggravated burglary and sentenced him accordingly. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On September 12, 2001, the Stark County Grand Jury indicted appellant with one count of aggravated burglary, in violation of R.C.2911.11(A)(1). At his arraignment, appellant plead not guilty. The matter proceeded to a jury trial on October 29, 2001. The following evidence was adduced at trial.
 {¶ 3} On August 18, 2001, at 11:20 a.m., Jody Shankle, her boyfriend, Fritz Moody, and her two children were present in an apartment Shankle leased on Alan Page Drive in Canton, Ohio. Ms. Shankle heard a loud banging on the door. Shortly thereafter, appellant kicked the door open, entering the apartment with a silver bar in his hands. There was another man accompanying appellant. When Moody came out of the bedroom, appellant charged at him, yelling Moody had "disrespect[ed] his woman." Appellant swung at Moody several times, before hitting Moody's face with his fist. The blow broke Moody's jaw.
 {¶ 4} After being taken to Timken Mercy Medical Center, Moody had two teeth removed and his jaw wired. Moody was required to stay in the hospital for two days. After he was discharged from the hospital, Moody continued therapy at the Jaw and Facial Institute.
 {¶ 5} Immediately after appellant hit Moody, Shankle ran out of the house and called the police. Officers Tucker and Presley of the Canton Police Department arrived and entered the apartment. They could see Moody's eye was closed and his jaw was swollen.
 {¶ 6} At trial, Officer Tucker testified he asked appellant what had happened. Officer Tucker testified:
 {¶ 7} "Like I said, he said, I don't usually do things like this and I asked him, I said, Well, what happened? And that's when he said he said that [Moody] was in some type of argument, or he said he had jumped on a girlfriend of his, and he got upset and came over and forced in the door and hit him." Tr. II at 156-157.
 {¶ 8} Officer Pressley also testified appellant told him Moody had been in a verbal altercation with appellant's girlfriend and appellant had come over to retaliate. Tr. II at 161.
 {¶ 9} Jody Shankle, the lessor of the apartment, was a witness for the State. However, on cross-examination, Shankle testified appellant had her permission to enter her apartment on August 18, 2001. At the close of her cross-examination by appellant, the State requested Shankle be declared a hostile witness because she had changed her testimony. The prosecutor told the trial court Shankle had told the prosecutor appellant did not have permission to be in her home. The trial court declared Shankle a hostile witness and the State proceeded to examine her as if on cross-examination. During this new cross-examination by the State, Ms. Shankle testified she did not want appellant in her apartment on that date because she knew there was a fight coming.
 {¶ 10} Appellant moved for a mistrial on the grounds the testimony by Officer Pressley appellant told him he had assaulted the victim in "retaliation" for his treatment of his girlfriend was not provided in discovery. The trial court overruled this motion finding the State had provided an accurate summary of appellant's statements. The trial court also overruled appellant's motion to dismiss under Crim.R. 29(F). Appellant called no witnesses and rested his case.
 {¶ 11} After hearing the evidence and receiving instructions from the trial court, the jury found appellant guilty. Appellant's motion for judgment notwithstanding the verdict was overruled.
 {¶ 12} In a November 8, 2001 Judgment Entry, the trial court found appellant guilty of aggravated burglary and sentenced him to nine years in prison for the offense.
 {¶ 13} It is from this judgment entry appellant prosecutes his appeal, assigning the following errors for our review:
 {¶ 14} "I. THE TRIAL COURT ERRED IN PERMITTING THE STATE TO PRESENT EVIDENCE OF STATEMENTS MADE BY THE APPELLANT WHICH WERE NOT PROVIDED IN DISCOVERY.
 {¶ 15} "II. THE APPELLANT'S RIGHT TO A FAIR TRIAL WAS VIOLATED WHEN THE PROSECUTOR ELICITED TESTIMONY THAT THE APPELLANT HAD A WARRANT.
 {¶ 16} "III. THE APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I. {¶ 17} In appellant's first assignment of error, he maintains the trial court erred in permitting the State to present evidence of statements made by appellant which were not provided in discovery. Specifically, appellant challenges the testimony of Officer Pressley.
 {¶ 18} During the trial, Officer Pressley testified appellant told him the victim, Fritz Moody, had been in a verbal altercation with appellant's girlfriend and appellant decided to "retaliate." However, the discovery the State provided to appellant under Crim.R. 16 stated "the defendant stated that he kicked in the door and assaulted Fritz because Fritz had jumped on a female friend of his."
 {¶ 19} Appellant objected to Officer Pressley's characterization of this statement as appellant's desire to retaliate. The trial court sustained the objection and issued a curative instruction. Notwithstanding this curative instruction, appellant's trial counsel, while cross-examining Officer Pressley, asked Officer Pressley if he had ever made a report stating appellant was going over to the apartment to retaliate. Shortly thereafter, outside the hearing of the jury, appellant's trial counsel moved for a mistrial based upon Officer Pressley's testimony. The trial court overruled appellant's motion stating that it believed the State's interpretation was fair and that the statements provided to appellant in discovery meant the same thing as to what the officers testified to on the stand. Tr. II at 166.
 {¶ 20} We agree with the trial court. When viewing the statement given to appellant in discovery and the statement given by Officer Pressley at trial, we see no significant difference. Accordingly, we find no error in the trial court's decision to overrule appellant's motion for a mistrial on this basis.
 {¶ 21} Appellant also challenges the testimony of Officer Tucker. During trial, Officer Tucker testified appellant told him "I don't know what got into me." Appellant again complains he was not given this portion of appellant's statement during discovery. While appellant did object to the statement, he did not request a mistrial on this basis.
 {¶ 22} The sanction for failure to provide discovery is set forth in Crim.R. 16(E)(3). This rule permits a trial court at any time during the proceeding to order a party to permit the discovery or inspection, to grant a continuance, or prohibit a party from introducing evidence of material not disclosed pursuant to the rule. Further, the rule permits the trial court to make any other such order as it deems just under the circumstances.
 {¶ 23} Appellant's trial counsel immediately objected after Officer Tucker's statement, at which time the following exchange took place on the record:
 {¶ 24} "[Officer Tucker]: I asked the subject here what happened, and he was distraught, and he sat there and said something, I don't know what happened. I don't know what got into me.
 {¶ 25} "MR. LOWRY: Objection, Your Honor. May we approach?
 {¶ 26} "THE COURT: Yes.
 {¶ 27} "(A conference was held at the bench outside the hearing of the jury.)
 {¶ 28} "THE COURT: Yes, sir.
 {¶ 29} "MR. LOWRY: My discovery, Your Honor, I clearly asked for an indication of what my client had said. That does not appear anywhere nor the police report which I had a copy of.
 {¶ 30} "MS. HARDY: He never said those words what it says. He says the big stuff, I kicked in the door, assaulted and he had said some bad things to my girlfriend, and that not those exact
 {¶ 31} words, but it's a summary of his statements, and that's the only statements that I was aware of.
 {¶ 32} "MR. LOWRY: Certainly I would take deference with the point of I don't know what got into me is of little point, I think. I think that's very prejudicial to my client.
 {¶ 33} "THE COURT: Well, fact of the matter is, this officer was known and identified in discovery.
 {¶ 34} "MR. LOWRY: And I have a complete supplement which was typed out for me, Your Honor, which is that does not appear anywhere.
 {¶ 35} "MS. HARDY: All that ever is a summary. It's not a statement quote word for word. It's a summary.
 {¶ 36} "THE COURT: Well, you can cross-examine him on the fact that wasn't included.
 {¶ 37} "MR. LOWRY: I would like to on, for the record I did ask for this. This was not provided.
 {¶ 38} "THE COURT: Well, certainly.
 {¶ 39} "MR. LOWRY: And I am aware they may not be aware of it but it's within your knowledge if the officers knows it, to ask him everything that was said. I don't think it would take too long to find out.
 {¶ 40} "MS. HARDY: He was in my office and I asked him what was said and he repeated what was in the supplement, and I mean he's evidently having some recall.
 {¶ 41} "THE COURT: You may certainly cross him as to why he didn't put that in is supplement." Tr. 155-156.
 {¶ 42} Thereafter, appellant's trial counsel chose not to cross-examine Officer Tucker on his failure to provide the offending statement in discovery.
 {¶ 43} We find the trial court did fashion a discovery sanction for the failure to provide discovery in permitting appellant to cross-examine Officer Tucker on the issue. We find this resolution to be a valid order pursuant to Crim.R. 16(B)(1)(a)(ii). Appellant cannot now claim error when he chose to ignore his opportunity to cross-examine Officer Tucker on this point.
 {¶ 44} The trial court did not abuse its discretion in permitting Officer Tucker's testimony concerning appellant's oral statements to him not specifically provided in discovery. Accordingly, appellant's first assignment of error is overruled.
 II. {¶ 45} In appellant's second assignment of error, he maintains his right to a fair trial was violated when Officer Tucker stated appellant had a warrant out for his arrest. We disagree.
 {¶ 46} At the outset, we note appellant has failed to provide this Court with a reference to the transcript indicating the location of the error claimed. For this reason alone, we could overrule appellant's assignment of error pursuant to App.R. 16(A). However, our review of the record leads us to believe we would overrule this assignment on the merits as well. In its brief, appellee points out that part of the record to which appellant apparently objects. The following exchange took place on the record:
 {¶ 47} "[Prosecutor]: And after the conversations you had with the subjects what did you do at that point?
 {¶ 48} "[Officer Tucker]: We did a warrant check on everybody in the house. Mr. Hill had a warrant and we arrested him and took him downtown. We had Ms. Shankle write out a statement as far as what happened.
 {¶ 49} "MR. LOWRY: Your Honor, may we approach? Objection, Your Honor. May we approach?
 {¶ 50} "THE COURT: Yes.
 {¶ 51} "(A conference was held at the bench outside the hearing of the jury.)
 {¶ 52} "MR. LOWRY: Your Honor, bringing out the fact that he has a warrant.
 {¶ 53} "THE COURT: You didn't object.
 {¶ 54} "MR. LOWRY: Well, I didn't know he was going to say it.
 {¶ 55} "MS. HARDY: I didn't know he was going to say it either.
 {¶ 56} "THE COURT: Are you objecting now?
 {¶ 57} "MR. LOWRY: Yes, the question was not asked, Your Honor, what did you do next. We ran a check and he had a warrant.
 {¶ 58} "THE COURT: I understand. if you would have objected at the time, I would have immediately stricken. Now, I'm going to have to strike a couple questions back and listen and draw more attention to it. So what is your option?
 {¶ 59} "MR. LOWRY: No, I don't want go through it, Your Honor. I think the State knew what they were going to say.
 {¶ 60} "MS. HARDY: No, I did not.
 {¶ 61} "THE COURT: If you would have objected at the second that he said it, I would have absolutely stricken the testimony. Now, I'm still willing to do that." Tr. at 157-158.
 {¶ 62} Appellant did not move for a mistrial on this issue and declined the trial court's offer to strike the testimony or to give the jury a limiting instruction. Accordingly, we analyze this assignment under a plain error analysis because of appellant's failure to raise a timely objection.
 {¶ 63} Crim.R. 52(B) provides: "(B) Plain Error Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
 {¶ 64} Notice of plain error under this rule is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. See: State v. Long (1978),53 Ohio St.2d 91; State v. Cooperrider (1983), 4 Ohio St.3d 226.
 {¶ 65} We can find no manifest miscarriage of justice in the trial court's decision to permit Officer Tucker's testimony to stand. The trial court offered to give a curative instruction which appellant rejected. While recognizing this could be sound trial strategy, we cannot find the trial court's allowance of this information to be a miscarriage of justice. As stated by defense counsel in the above quoted portion, it may have been more damaging to have the jury hear the information again.
 {¶ 66} Further, because appellant has failed to direct us to a specific portions of the record supporting these arguments, we find no error in the trial court's decision not to grant a mistrial on this issue.
 {¶ 67} Accordingly, appellant's second assignment of error is overruled.
 III. {¶ 68} In appellant's third assignment of error, he maintains his conviction was against the manifest weight of the evidence. We disagree.
 {¶ 69} We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
 {¶ 70} In order to prove aggravated burglary, the jury was required to find appellant, by force, stealth, or deception, trespassed in an occupied structure located at 719 Alan Page Drive, SE, Apt. 5, Canton, Ohio. Trespass is defined as any entrance, knowingly made, in a structure of another without authority, consent or privilege to do so.
 {¶ 71} Appellant maintains the jury could not find him guilty of aggravated burglary because Ms. Shankle had given him permission to enter her apartment at any time, including the night of the assault. As noted above, Ms. Shankle testified in response to questions from appellant's counsel that appellant had permission to enter. When cross-examined with a conflicting statement given to the prosecutor's office, Ms. Shankle testified she only meant she did not want appellant to come in because she knew a fight would ensue. Appellant argues this statement implies Ms. Shankle had never revoked appellant's authority to enter her apartment at any time.
 {¶ 72} However, in addition to Ms. Shankle's testimony, Mr. Moody testified he observed appellant kick in the door and enter the apartment with another person. At this time, he observed Ms. Shankle run out of the house to call the police. Further, Officers Tucker and Pressley observed damage to the door when they responded to a dispatch call.
 {¶ 73} We find the jury did not lose its way, creating a manifest miscarriage of justice. The jury was free to believe or disbelieve all or part of Ms. Shankle's testimony. Further, the jury was not only entitled, but required to examine the testimony of the other witnesses as it related to the manner in which appellant entered the apartment and Ms. Shankle's reaction to that entry. Accordingly, appellant's third assignment of error is overruled.
 {¶ 74} The November 6, 2001 Judgment Entry of the Stark County Court of Common Pleas is affirmed.
By: Hoffman, P.J., Wise, J. and Edwards, J. concur.
topic: MWE.